UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARC LAFRANCE,

    Plaintiff,

v.                                                  Case No. 08-13411
                                                    Hon. Lawrence P. Zatkoff

GRAND RIVER NAVIGATION
COMPANY, INC.,

    Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on September 20, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for a New Trial [dkt 47]. Defendant has filed a response, and Plaintiff has replied. The Court finds that the facts and legal arguments pertinent to Plaintiff's Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Plaintiff's Motion is DENIED.

### II. BACKGROUND

Plaintiff is a Florida resident who was employed as a cook aboard the *M/V Maumee*, Defendant's vessel, when the incident giving rise to this action occurred. On May 9, 2008, Plaintiff departed on the *M/V Maumee*. As the cook, Plaintiff was responsible for preparing meals for the

crew, as well as maintaining a supply of beverages for the crew. The next morning, Plaintiff prepared Kool-Aid in a five-gallon container. The container was stored inside of a dispensing cooler. According to Plaintiff, while carrying the filled container to the cooler, the vessel rolled in the water and the cooler door swung shut. Plaintiff rotated to the left and set the container down on the floor. While lowering the container, Plaintiff severely injured his back. After the *M/V Maumee* reached its final destination of Cleveland, Ohio, on May 12, 2008, Plaintiff first received medical attention.

Plaintiff filed his Complaint on August 6, 2008, asserting that Defendant was negligent under the Jones Act, 46 U.S.C. § 688, *et seq.*, and that the vessel was unseaworthy under general maritime law. Plaintiff also sought maintenance and cure. The case proceeded to trial on January 11, 2011. At trial, Plaintiff argued that Defendant's failure to provide a means to secure the cooler door in an open position was negligent and the failure of the cooler door to remain in an open position constituted an unseaworthy condition.

In proving his case, Plaintiff testified before the jury regarding the incident on May 10, 2008, and his experience as a seaman on other vessels. Plaintiff also called Captain Joe Maurer and Chief Cook Theo Igieliski. They testified to the jury regarding general maritime practices to maintain safety aboard the vessel, such as securing any item that swings, moves, or opens. Plaintiff also called an expert biomechanical engineer and ergonomist, Dr. Andres, who testified about Plaintiff's incident from a biomechanical perspective. In opposing Plaintiff's claims, Defendant called two cooks who had worked aboard the *M/V Maumee*—Irenee Salva and Kathleen Pavlovich. Defendant also called Brian Harvey, who was the first mate aboard the *M/V Maumee* at the time of the incident. He testified about the conditions on the day of the incident as well as the general

effects of weather on the vessel's motion.

On January 14, 2011, the jury returned a verdict in favor of Defendant. As set forth on the Verdict Form, the jury answered "No" to both of the following questions:

> 1. Did Defendant fail to provide a reasonably safe workplace for Plaintiff?
>
> 2. Did an unseaworthy condition exist on Defendant's vessel?

Based on those answers, there were no additional questions for the jury to consider. The Court entered a Judgment on March 23, 2011. Plaintiff timely filed the instant Motion for a New Trial. In his Motion for a New Trial, Plaintiff asserts that the great weight of the evidence presented at trial established that (1) the *M/V Maumee* was unseaworthy under general maritime law and (2) Defendant was negligent under the Jones Act due to the unsecured cooler door that swung closed while Plaintiff was attempting to place the five-gallon container into the cooler. The Court will address each of Plaintiff's claims below.

### III.  STANDARD OF REVIEW

Rule 59(a) of the Federal Rules of Civil Procedure states: "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in any action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." The Supreme Court has stated that the authority to grant new trials under Rule 59(a) "is large" and that authority to grant a new trial exists "if the verdict appears to [the judge] to be against the weight of the evidence." *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996). The motion therefore should be denied if the verdict is one which could reasonably have been reached; and the verdict should not be considered unreasonable merely because different inferences and conclusions could have been drawn or because other results are

3

more reasonable. *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001).

## IV. ANALYSIS

### A. PLAINTIFF'S UNSEAWORTHINESS CLAIM

The Court first addresses whether the jury's finding that the *M/V Maumee* was seaworthy on May 10, 2008—the date of Plaintiff's injury—appears to be against the weight of the evidence presented at trial. According to general admiralty law, the doctrine of unseaworthiness imposes a nondelegable duty on a ship owner to provide a vessel and its equipment that is reasonably suited for their intended purpose. *Cook v. Am. S.S. Co.*, 53 F.3d 733, 741 (6th Cir. 1995) (citing *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494 (1971)); see *Churchill v. Bluegrass Marine, Inc.*, 444 F.3d 898, 904 (6th Cir. 2006) ("A vessel is unseaworthy if the vessel and its appurtenances are not reasonably fit for their intended use. Defective gear . . . or the use of an improper method of storage or unloading cargo all render a vessel unseaworthy." (citations omitted)). As the United States Supreme Court has explained:

> What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. . . . [I]t is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suited for her intended service.

*Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).

Plaintiff argues that he is entitled to a new trial because the evidence presented to the jury demonstrated that: (1) the cooler door swung closed as Plaintiff was attempting to place the five-gallon container in the cooler; (2) the testimony presented at trial indicated that a latch was used to secure cooler doors in an open position on other vessels; and (3) the cooler door on the *M/V Maumee* had a latch to secure it closed, yet no latch to secure it open. Plaintiff also argues that the

testimony of the two cooks, Salva and Pavlovich, are irrelevant because their testimony does not contradict Plaintiff's testimony that the door swung closed, and thus the cooler door failed to function properly due to the lack of a latch. As such, Plaintiff contends that the cooler door was not reasonably fit for its intended purpose. Plaintiff also relies, among other cited legal authority, on *Oliveras v. Am. Exp. Isbrandtsen Lines, Inc.*, 431 F.2d 814 (2nd Cir. 1970), where the case was remanded for a new trial because the jury incorrectly determined that a failed securing mechanism on the vessel's door was found to be seaworthy.

Contrary to Plaintiff, Defendant contends that the lack of a latch to hold the cooler door open was not a determinative piece of evidence. Rather, significant evidence was presented by both parties regarding the incident that resulted in Plaintiff's injury. Defendant concludes that the jury considered that evidence, weighed the credibility of the witnesses, and resolved the claim against Plaintiff. As such, Defendant argues that Plaintiff's Motion should be denied.

The Court finds that the verdict rendered by the jury was not against the weight of the evidence and could have been reasonably reached because disputed issues of fact existed on which reasonable minds could differ. *See Gasperini*, 518 U.S. at 433; *Walker*, 257 F.3d at 670. The mere fact that Plaintiff failed to persuade the jury with the evidence that he presented at trial does not establish that the verdict was against the clear weight of the evidence. As opposed to Plaintiff's testimony that was based on two days aboard the *M/V Maumee*, Pavlovich testified that she worked in the galley on the *M/V Maumee* for approximately two years. She stated that she filled the container every other day. She further testified that she never experienced enough vessel motion to cause the cooler door to swing closed, believing in part that the door would "stick" open. Salva, another cook that had worked aboard the *M/V Maumee* for two years, was relieved by Plaintiff on

5

May 7, 2008. She testified that due to her size she would request another crew member on the *M/V Maumee* to place the five-gallon container in the cooler. She also testified that the cooler door never inadvertently shut once it was opened. While Plaintiff argues that Salva and Pavlovich's testimony does not provide a reasonable basis to conclude that the cooler door did not swing closed on May 10, 2008, the jury was able to weigh Plaintiff's testimony against Salva and Pavlovich's testimony to reasonably conclude that the cooler door did not swing closed as Plaintiff testified. Plaintiff's expert also provided no additional evidence to the jury on this issue. Dr. Andres discussed how the weight of the filled container and rotation of Plaintiff to the left supported Plaintiff's injury. Dr. Andres' testimony, however, was irrelevant as to whether the cooler door inadvertently closed.

In addition, Harvey, the first mate aboard the *M/V Maumee* on May 10, 2008, testified that the weather condition on May 10, 2008, was calm with minimal winds and any motion aboard the vessel would have been negligible. Harvey based his testimony on entries in the *M/V Maumee*'s log book and his personal observations. Based on the evidence presented to the jury, the jury had a reasonable basis to disregard Plaintiff's testimony and conclude that there was insufficient vessel motion on May 10, 2008, to cause the cooler door to swing closed.

As to Plaintiff's relevant legal authority, Plaintiff asserts, based on the factual similarity of this case and *Oliveras,* the Court should find that the lack of a latch to secure the cooler door open made the vessel unseaworthy. In *Oliveras*, a plaintiff alleged that the shipowner's vessel was unseaworthy due to a wedge and hook that failed to secure a door on the vessel, causing an injury to the plaintiff's hand. 431 F.2d at 814–15. The incident occurred when the vessel was in rough seas off the New England coast. *Id.* A wave broke over the bow and continued toward the direction of the plaintiff. *Id.* at 815. The plaintiff headed through the open door, at which point the door shut,

6

due to the vessel's sudden movement, and hit the plaintiff's hand. *Id.* at 815. At trial, a jury returned a verdict that the vessel was seaworthy. *Id.* at 815. Reviewing the judgment against the plaintiff, the appeals court reversed and remanded the case for a new trial on the issue of whether the ship was unseaworthy. *Id.* at 815. The appeals court noted that "[a] ship is not secure for sea, and hence is unseaworthy, when the fitting under scrutiny does not perform its intended function in weather which can be reasonably anticipated." *Id.* at 816. The appeals court, applying this principle, held that "[n]othing more need be shown except that the [wedge and hook] failed under conditions when it should have functioned properly." *Id.* at 816.

Contrary to Plaintiff's assertions, the Court finds *Oliveras* distinguishable from this case. In *Oliveras*, it appears that the defendant shipowner did not dispute that the wedge and hook failed to secure the door. Instead, the appeals court analyzed whether the failure of the wedge and hook meant it was not fit for its intended purpose. *See id.* 815–16. Unlike *Oliveras*, in this case there was no latch already in place and the jury had a reasonable basis to conclude from the testimony of the cooks and first mate that the door on the cooler did not swing shut. Accordingly, for the reasons stated above, Plaintiff's Motion for a New Trial is denied with respect to his unseaworthiness claim.

## B.   PLAINTIFF'S JONES ACT CLAIM

The Court next addresses whether the jury's finding that Defendant was not negligent under the Jones Act appears to be against the weight of the evidence presented at trial. Under the Jones Act, 46 U.S.C. § 688, a seaman may maintain a negligence action for personal injury suffered in the course of employment against his or her employer. *Churchwell*, 444 F.3d at 907. To establish a claim under the Jones Act, the seaman must show that the employer was negligent and such negligence caused, however slight, the injury to the seaman. *Perkins v. Am. Elec. Power Fuel*

*Supply, Inc.*, 246 F.3d 593, 599 (6th Cir. 2001). Negligence is shown by demonstrating that the "employer failed to provide a safe workplace by neglecting to cure or eliminate obvious dangers of which the employer or its agents knew or should have known and that such failure caused the plaintiff's injuries and damages." *Taylor v. Teco Barge Line, Inc.*, 517 F.3d 372, 383 (6th Cir. 2008) (citing *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir. 2001)).

The parties' make the same arguments with respect to the jury's finding under the Jones Act claim as they did with respect to the jury's finding under the seaworthiness claim. After reviewing the parties' arguments under the Jones Act and the evidence presented at trial, the Court finds that a reasonable jury could have found that Defendant was not negligent under the Jones Act as this jury did. The jury had a reasonable basis to conclude from the evidence presented that Defendant, or its employees, did not know or should have not known that the cooler door would swing shut and cause Plaintiff's injury. As the testimony of Pavlovich indicated, the cooler door never inadvertently shut while she was working as a cook. Salva's testimony, a second cook that worked on the *M/V Maumee*, supports Pavlovich's statements. Other than Plaintiff's testimony that he worked on a vessel that had a latch to secure the cooler door open, no other evidence presented to the jury established that Defendant knew or should have known of any possible defect in the cooler door. *See Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993) ("There must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have known of the unsafe condition."). Absent such evidence, the jury had a reasonable basis to find that Defendant was not negligent under the Jones Act. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000). Accordingly, Plaintiff's Motion for a New Trial is denied with respect to his Jones Act Claim.

8

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiff's Motion for a New Trial [dkt 47] is DENIED.

IT IS SO ORDERED.

                                              S/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              UNITED STATES DISTRICT JUDGE

Dated:  September 20, 2011

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 20, 2011.

                                              S/Marie E. Verlinde
                                              Case Manager
                                              (810) 984-3290